Glecina **BETHEA–TUMANI,** Petitioner

v.

**BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, State Board of Nursing, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 16, 2010.
Decided April 28, 2010.

---

David C. Harrison, Philadelphia, for petitioner.

C. William Fritz, II, Asst. Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and BROBSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge BROBSON.

In this appeal, Glecina Bethea–Tumani[1] (Applicant) petitions for review of a final adjudication and order of the State Board of Nursing (Board), denying her application for a license as a registered nurse by examination under the Professional Nursing Law (Law).[2] In April 1994, Applicant pled guilty to aggravated assault, a felony.

In July 2008, she pled guilty to insurance fraud and conspiracy, two misdemeanors. She applied to the Board for a license on or about September 8, 2008. In its final adjudication and order, the Board denied Applicant's license application based on these convictions. We affirm.

## BACKGROUND [3]

Applicant was 19 years old[4] when, on or about February 4, 1994, she was involved in a fight with another female after leaving work. The verbal altercation, which the other female appears to have initiated, grew into a physical one. Applicant claims that during the fight she saw something that looked like a knife in the other female's hand. Part of Applicant's work uniform included an apron with a box cutter in the front pocket. Applicant pulled the box cutter out of her apron pocket and cut the other female's arm. Bystanders broke up the fight, and the women went their separate ways. A few days later, detectives arrested Applicant. She subsequently pled guilty to aggravated assault and served six months in Philadelphia County Prison.

After her release from prison, Applicant went to school to become a medical assistant. She then secured employment with

---

1. The record in this case is inconsistent as to the correct spelling of Applicant's last name. For example, Applicant's license application to the Board provides that her last name is "Bethea–Tumaini." (R. 5a.) The petition for review filed with this Court by Petitioner's counsel, however, identifies the Petitioner's last name as "Bethea–Tumani." The Court recognizes that the spelling in the license application may be the correct spelling of Applicant's last name. For consistency purposes in this appeal, however, we adhere to the spelling of the parties used by Applicant's counsel in the petition for review.

2. Act of May 22, 1951, P.L. 317, *as amended,* 63 P.S. §§ 211–225.5.

3. On appeal, Applicant does not challenge the Board's findings of fact: "In the instant case, it is true that the Board made findings of fact.... [T]hese findings were on matters that were uncontested." (Applicant's Br. at 13.)

4. Although Applicant testified during the hearing before the Board's hearing examiner that she was 18 years old at the time (R. 39a), the court records relating to the felony conviction reflect her date of birth as January 3, 1975, and the date of incident as February 4, 1994. (R. 11 a.)

the Professional Medical Center in Philadelphia, followed by a temporary position with SmithKline. Thereafter, she worked for 10 years as a medical assistant with Philadelphia Health Management Corporation, where she worked with women and children recovering from drug and alcohol addiction. She stopped working in June 2007 to focus on completing nursing school. She completed her nursing studies at Holy Family University in May 2008.

Applicant's July 2008 guilty plea to insurance fraud and conspiracy arose out of a September 2004 incident. While driving her vehicle, Applicant sideswiped a pole. She took the car to an auto body shop for a repair estimate. She and the auto body manager reviewed the damages to the vehicle. When the manager excused himself to take a call, a man, identifying himself as a police officer, approached Applicant. The man told Applicant that he could help her by writing a report of the accident that made it appear that the accident was not Applicant's fault and that he would cover the $500 deductible. When Applicant asked how he would do that, the man told her not to worry, it would be fine, and that he would take care of everything. Though Applicant was a little leery of the man, she acquiesced after he showed her a badge, believing the man would not steer her wrong. Applicant signed some documents and provided the auto body manager with her insurance card and a copy of her driver's license. She told her insurance company that her vehicle was sideswiped.

In 2007, a Federal Bureau of Investigation agent and a Philadelphia police officer questioned Applicant and informed her that she was going to be arrested as part of an insurance scam that involved over 300 people. About five months later, her lawyer informed her that she was going to be charged with insurance fraud and needed to turn herself in. In July 2008, Applicant pled guilty to insurance fraud and conspiracy, two misdemeanors. The court sentenced her to two years supervised probation and ordered her to pay costs and fees of $183.00 and restitution of $3,000.00.

On or about September 8, 2008, Applicant applied to the Board for a license to practice professional nursing by examination in the Commonwealth. Question 5 of the Board's application form requires the applicant to disclose whether the applicant has ever been convicted (including a guilty plea) of any crime, whether a felony or misdemeanor. (R. 5a.) Applicant responded to this question in the affirmative and disclosed to the Board the October 1994 guilty plea for aggravated assault and the July 2008 guilty plea for insurance fraud and conspiracy. (R. 7a.) By letter dated December 1, 2008, counsel to the Board notified Applicant that the Board provisionally denied her application, based upon her criminal history.

Applicant appealed the provisional denial and requested a hearing. The Board appointed a hearing examiner to conduct the hearing. The hearing examiner conducted a formal hearing on March 25, 2009. Applicant was represented by counsel at the hearing. The hearing examiner first admitted into the record, without objection from the parties, Board Exhibit B–1, which consisted of Applicant's license application and other materials considered by the Board in its provisional denial of the application. At the request of the Commonwealth's attorney, and without objection by Applicant, the hearing examiner also admitted into the record certified court records of Applicant's criminal convictions. The Commonwealth offered no additional evidence or direct testimony during the hearing. The parties waived their opportunity to file post-hearing briefs with the Board. (R. 72a.)

Applicant testified on her own behalf.[5] She testified about her criminal history, providing details of the circumstances that led to her convictions. She also testified about her family and her employment history, including her pursuit of her nursing degree. She testified that her term of probation for her insurance fraud conviction did not end until July 29, 2010, but could end sooner if she is able to pay her fines before then. (R. 62a–63a.) Applicant also testified that at the time of the hearing she was unemployed, attributing her inability to secure a job as a medical assistant to questions by potential employers about the insurance fraud conviction. (R. 63a.) Finally, she testified about her desire to become a nurse so she could take care of her family and help people. (*Id.*) In addition to her testimony, she offered two exhibits into evidence. The first was a clinical evaluation of her performance in nursing school. The second was a written statement about her criminal record that she submitted to the Board in support of her application.

The Board deliberated Applicant's appeal of the provisional denial of her application at its May 4, 2009 meeting. In its final adjudication and order dated July 29, 2009, the Board, citing Section 6 of the Law, 63 P.S. § 216, found that Applicant had failed to produce "satisfactory evidence that she is of good moral character, can practice nursing with reasonable skill, honesty, and safety to patients, and is able to meet the requirements of the profession." (R. 136a.) In further support of its decision, the Board concluded it was authorized under Section 14(a)(5) of the Law, 63 P.S. § 224(a)(5), to refuse to issue a license to Applicant due to her criminal history.

## DISCUSSION

On appeal,[6] Applicant presents two primary issues for our review. First, Applicant argues that the Board's adjudication and order was legally deficient, in that it did not adequately address the evidence Applicant presented during the hearing in mitigation of her criminal history. Second, Applicant argues that the Board abused its discretion in concluding, without explanation, that Applicant had not furnished satisfactory evidence that she is of good moral character, can practice nursing with reasonable skill, honesty and safety to patients, and is able to meet the requirements of the profession.

The Board was tasked with the duty to determine whether Applicant met the requirements for licensure under Sections 6 and 14(a)(5) of the Law. Commonwealth Court has recognized that the state has the right to license professions "in a manner so as to safeguard the interest of the public from those who are incompetent or unqualified to engage in practice." *Allen v. Dep't of State, Bureau of Prof'l and*

---

5. Though Applicant attempted to offer into evidence two letters as character references, the Commonwealth's attorney objected to their admission as hearsay. The Hearing Examiner sustained the objection.

6. This Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or whether findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *Wittorf v. State Board of Nursing,*

913 A.2d 956 (Pa.Cmwlth.2006). The scope of appellate review of the Board's disciplinary sanction is "limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions." *Goldberger v. State Board of Accountancy,* 833 A.2d 815, 817 n. 1 (Pa.Cmwlth.2003) (quoting *Slawek v. State Board of Medical Education and Licensure,* 526 Pa. 316, 322, 586 A.2d 362, 365 (1991)).

*Occupational Affairs,* 141 Pa.Cmwlth. 418, 595 A.2d 771, 773 (1991).

Section 6 of the Law provides, in relevant part: "Every applicant, to be eligible for examination for licensure as a registered nurse, shall furnish evidence satisfactory to the Board that he or she is of good moral character. . . ." Section 14(a)(5) of Law further provides:

> (a) The Board may refuse, suspend or revoke any license in any case where the Board shall find that—
>
> . . .
>
> (5) The licensee has been convicted, or has pleaded guilty, or entered a plea of nolo contendere, or has been found guilty by a judge or jury, of a felony or crime of moral turpitude, or had received probation without verdict, disposition in lieu of trial or an Accelerated Rehabilitation Disposition in the disposition of felony charges, in the courts of this Commonwealth, the United States or any other state, territory, possession or country.

*1. Whether the Board's adjudication and order was legally deficient in that it did not adequately address the evidence Applicant presented during the hearing in mitigation of her criminal history?*

Applicant argues that the Board's adjudication was legally deficient because the Board failed to issue a "reasoned decision," improperly considered a fourteen year-old conviction, and did not make proper credibility determinations given the lack of "live" testimony before the Board. The Board counters that its adjudication was based upon substantial and relevant evidence that Applicant is not qualified for licensure based on her criminal history of pleading guilty to aggravated assault, insurance fraud and conspiracy, which raise concerns about her moral character.

*a. Whether the Board failed to issue a "reasoned decision"?*

■ With regard to Applicant's first contention that the Board failed to issue a reasoned decision, Applicant argues that this case is controlled by *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transport),* 574 Pa. 61, 828 A.2d 1043 (2003), such that the Board was required to issue a "reasoned decision." In *Daniels,* the Supreme Court interpreted Section 422 of the Workers' Compensation Act (Act),[7] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 834, to require a Workers' Compensation Judge (WCJ) to articulate actual, objective bases for credibility determinations in the absence of circumstances where a credibility assessment may be said to have been tied to the inherently subjec-

---

7. Section 422 of the Act provides:

Neither the board nor any of its members nor any workers' compensation judge shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for any reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834.

tive circumstances of witness demeanor. The decision in *Daniels* has been interpreted by this Court to require a WCJ to state his or her reasons for credibility determinations as to deposition testimony, where the WCJ does not observe the demeanor of the witness providing the testimony, so that the reviewing body may determine whether those reasons are set forth in the record. *O'Donnell v. Workers' Comp. Appeal Bd. (United Parcel Serv.)*, 831 A.2d 784 (Pa.Cmwlth.2003).

Although Applicant contends that *Daniels* controls, she also acknowledges that there is no requirement for a "reasoned decision" in cases involving the Board. She argues, nevertheless, that the concept has been engrafted into Section 507 the Administrative Agency Law, 2 Pa.C.S. § 507, which requires that all agency adjudications be in writing and "contain findings and the reasons for the adjudication."

The Board argues that *Daniels* is inapplicable, noting that *Daniels* is a workers' compensation decision, and that this Court specifically has held that administrative adjudicators may determine credibility from a reading of a transcript. *Pellizzeri v. Bureau of Prof'l and Occupational Affairs*, 856 A.2d 297, 300 (Pa.Cmwlth.2004).

We note that *Daniels* was a workers' compensation case that presented our Supreme Court with an issue of first impression based upon the very specific statutory requirements of Section 422(a) of the Act, requiring a WCJ's decision to be a "reasoned decision." The Supreme Court decided a purely legal issue—"the proper construction of Section 422(a)'s reasoned decision requirement in a case with conflicting evidence." *Daniels*, 574 Pa. at 67–8, 828 A.2d at 1046–7. In so doing, the Supreme Court examined the specific language contained in Section 422(a) of the Act, making no reference or analogy to Section 507 of the Administrative Agency Law. The Supreme Court concluded that pursuant to Section 422 of the Act, "[a]bsent the circumstance where a credibility assessment may be said to have been tied to the inherently subjective circumstance of witness demeanor, some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review." *Id.* at 78, 828 A.2d at 1053. Ultimately, the Supreme Court held that "a decision is 'reasoned' for purposes of Section 422(a) if it allows for adequate review by the WCAB without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A reasoned decision is no more, and no less." *Id.* at 77, 828 A.2d at 1052.

Our review of the case law reveals that although *Daniels* may provide guidance generally as to the need for a decision to be sufficient to allow for meaningful appellate review, none of the non-workers' compensation cases that have cited *Daniels* actually extend the statutory provisions of Section 422(a) of the Act to the context of non-workers' compensation proceedings. *See Commonwealth of Pa. v. $6,425.00 Seized from Esquilin*, 583 Pa. 544, 558, 880 A.2d 523, 531, n. 7 (2005) (generally citing *Daniels* in dicta as discussing proper role of credibility determinations in cases of disputed evidence where live testimony is not heard, but noting that where no demeanor-based credibility determination is made, reasons for ruling are subject to objective evaluation); *Kyu Son Yi v. State Bd. of Veterinary Med.*, 960 A.2d 864, 873, n. 12 (Pa.Cmwlth.2008) (Court considered whether agency's use of facts not placed on record but known to professional members of agency's governing board is appropriate exercise of agency's expertise and citing *Daniels* when it noted board did not make credibility assessment

based on witness demeanor but objective reasons); *Salters v. Pa. State Police Mun. Police Officers' Educ. and Training Comm'n,* 912 A.2d 347, 355 (Pa.Cmwlth. 2006) (citing *Daniels* for the proposition that an "agency opinion needs to contain sufficiently detailed findings of fact ... so that the Commonwealth Court can perform a meaningful review."). In *Salters,* this Court even noted that Section 507 of the Administrative Agency Law imposes *similar requirements* as *Daniels* on agency adjudications, recognizing that adjudications issued pursuant to that section "shall be in writing, shall contain findings and the reasons for the adjudication." *Salters,* 912 A.2d at 355, n. 16 (emphasis added).

Given the unique nature of workers' compensation proceedings, the detailed statutory provisions set forth in Section 422(a) of the Act, the lack of other cases specifically applying the requirements of Section 422(a) to proceedings other than workers' compensation cases, and the similar (but not identical) provisions set forth in Section 507 of the Administrative Agency Law, the Court cannot agree with Applicant that *Daniels* controls the outcome of this case or requires the Board to alter its procedure to allow for credibility determinations based on "live" testimony as Applicant would have us believe. Rather, although *Daniels* may be instructive as to the need for a decision that sets forth reasons and is sufficient to allow for meaningful appellate review, it does not establish a per se requirement that all agency decisions involving conflicting evidence where the fact-finder does not observe the witness' demeanor must provide the same level of detail for the rejection of testimony as a WCJ must provide pursuant to Section 422(a) of the Act. That is not to say, however, that there must not be some objective basis for the decision. *See $6,425.00 Seized from Esquilin,* 583 Pa. at

558, 880 A.2d at 531, n. 7. The real question, however, seems to be whether the decision allows for meaningful appellate review. *See Salters,* 912 A.2d at 355.

We note that this case actually does not involve conflicting evidence, despite Applicant's attempted reliance on *Daniels.* Rather, the evidence consisted of the documents considered by the Board—i.e., materials related to Applicant's application and convictions, and Applicant's testimony, which was consistent with those materials.

In *Petition for Formation of Independent School District,* 962 A.2d 24 (Pa. Cmwlth.2008), a case relied upon by Applicant in further support of her argument that the adjudication is not a "reasoned decision," this Court considered the sufficiency of a determination by the Secretary of Education, as stated in a "disapproval letter." After determining that the letter was adjudicatory in nature, the Court examined whether the adjudication satisfied the requirements of Section 507 of the Administrative Agency Law. Concluding that it did not, we vacated and remanded the matter to the trial court with direction that it secure a proper adjudication from the Secretary regarding the merits. The Court explained:

> Section 507 of the [Administrative Agency] Law requires that adjudications contain findings of fact that are "sufficiently specific to enable [a reviewing] court ... to pass upon questions of law." *Henderson v. Office of Budget,* 113 Pa. Cmwlth. 306, 537 A.2d 85, 86 (1988). Here, the Secretary found, in effect, that the Coalition failed to submit sufficient information to establish that the proposed transfer has merit from an educational standpoint. However, in *Henderson,* this court held that adjudications stating only that a party "failed to present evidence" to meet his or her

burden do not comply with Section 507 of the [Administrative Agency] Law. *Id.* Indeed, the Secretary's findings reveal nothing about the information submitted, i.e., what the Secretary believed and considered and what the Secretary did not believe or consider. Absent any specific findings regarding the evidence, it is impossible for this court to conduct appellate review of the Secretary's adjudication.

*Petition for Formation of Indep. Sch. District,* 962 A.2d at 28.

One important factor to note, however, is that the "adjudication" in *Petition for Formation of Independent School District* was particularly sparse. In fact, it contained only an introductory paragraph, three numbered findings, and a conclusion that "for these reasons, [the Secretary finds] that the proposed transfer lacks merit from an educational standpoint." *Id.* at 26. The findings were essentially limited to the following: (1) the information submitted establishes that petitioners seek to transfer a portion of the district; (2) the "information submitted does not establish that the school districts provide unacceptable academic programs and/or learning environments;" and (3) "[t]here is no educational benefit to the proposed transfer." *Id.* Certainly, the findings of fact in the case presently before the Court are substantially more developed than those in *Petition for Formation of Independent School District.*

While we agree with Applicant that the Board could have issued an opinion with more detailed factual findings regarding her asserted remorsefulness and personal accomplishments, we cannot conclude that the Board's findings and conclusions are so lacking as to not meet the minimal requirements for an adjudication under Section 507 of the Administrative Agency Law. A review of the adjudication reveals

that the Board made very specific findings of fact regarding the convictions and the potentially mitigating circumstances surrounding the convictions, as well as findings regarding Applicant's professional achievements and work history. A review of the adjudication as a whole reveals that the Board merely gave more weight to the convictions than to the mitigating circumstances and Applicant's statements of remorse and reform when reaching its determination. Under these circumstances, we must conclude that the adjudication is sufficient to allow effective appellate review under Section 507 of the Administrative Agency Law.

b. *Whether the board improperly considered a fourteen year-old conviction?*

 Applicant further contends that the Board erred in considering her conviction that occurred fourteen years earlier. *See Sec'y of Revenue v. John's Vending Corp.,* 453 Pa. 488, 309 A.2d 358 (1973) (conviction for selling alcohol and opium 15 years earlier not basis for denying applicant license to sell cigarettes); *Ake v. Bureau of Prof'l & Occupational Affairs, State Bd. of Accountancy,* 974 A.2d 514, 520 (Pa.Cmwlth.2009), *allocator denied,* —— Pa. ——, 987 A.2d 162 (2009) (Illinois felony conviction for harassment five years prior to application to practice accounting in Pennsylvania not reason to deny application, especially because crime did not reflect character qualities essential to holding a CPA certificate).

The Board responds that it properly considered the convictions and circumstances surrounding them. The Board attempts to distinguish the decisions in *John's Vending* and *Ake,* partly by noting that Applicant's case differs from the cases cited because, here, there are the two instances of criminal conduct in this case, one more recent and one more remote,

which together show a pattern of bad judgment and call into question Applicant's moral character and ability to practice nursing. Moreover, the most recent crimes directly relate to honesty, and the conviction occurred within a year of the application for licensure. The Board contends that these two incidents provide substantial evidence supporting the Board's findings, and the Board reiterates that it is specifically authorized to refuse to issue a license to an applicant where the applicant has pled guilty to a felony and/or crime of moral turpitude.

As to Applicant's contention that the conviction 14 years ago was too remote in time to be considered, neither *John's Vending* nor *Ake* provide a per se rule that a conviction remote in time may not be considered in the licensing context. Instead, both of those cases appear to attempt to apply some "perspective" as to the usefulness of consideration of the remote conviction given the circumstances presented.

In *John's Vending*, the Supreme Court considered an appeal of a denial of a wholesale cigarette dealer's license based upon evidence that a shareholder and former president of that corporation had previously been convicted of certain crimes, and that such convictions were not listed on appellant's license application. Section 403(2) of the Cigarette Tax Act[8] requires that an applicant not have been convicted of a crime of moral turpitude. The Supreme Court considered the entire circumstances and concluded that "there is no material relevance between the past derelictions of this applicant and his present ability to perform duties required by the position." *John's Vending*, 453 Pa. at 493, 309 A.2d at 361. The Supreme Court explained that these crimes occurred almost twenty years ago, rendering them of little value in predicting future conduct, noting that the individual has held a position of responsibility for twelve years without any allegation of impropriety. *Id.* at 493–94, 309 A.2d at 361–62.

Similarly, in *Ake*, this Court considered whether the State Board of Accountancy abused its discretion when it revoked an accountant's license based on a conviction for criminal harassment in another state. In considering the matter, we noted that "*John's Vending* teaches that the nature of the offending conduct and its remoteness in time must be considered where an agency seeks to revoke a professional license on the basis of a conviction." *Ake*, 974 A.2d at 520. Concluding that the Board *did not have a basis to impose the maximum penalty*, which is different than concluding that the Board erred in considering at all a conviction that is arguably remote in time, we wrote:

> In this case, nearly seven years elapsed between Ake's offending conduct and his application to reactivate his Pennsylvania CPA credentials. While not as long as the twenty years that elapsed in *John's Vending*, seven years is a substantial interval of time. Moreover, Ake's conduct was isolated to calls made over a two-week period; he has not engaged in similar conduct since his arrest.
>
> . . .
>
> Ake's harassing conduct in Illinois was certainly deplorable. However, it does not relate to any of the character qualities the legislature has identified as central to holding a CPA certificate, *i.e.*, honesty, integrity and being able to practice accounting in a non-negligent manner.

8. Act of July 22, 1970, P.L. 513, *as amended*, formerly 72 P.S. § 3169.403(2). This provision was repealed by Section 5 of the Act of December 21, 1981, P.L. 482, 72 P.S. § 8297.

*Id.* at 520. We vacated the board's order and remanded for imposition of a lesser sanction, concluding that although the board had grounds to impose a sanction upon Ake, it abused its discretion by imposing the most drastic sanction available—*i.e.,* revocation. *Id.* at 522. Instead, revocation should be reserved for the worst offenders. *Id.*

This Court, in directing that a lesser sanction be imposed in *Ake,* must have considered the conviction despite its remoteness in time. Otherwise, there would have been no basis for any sanction. It appears, however, that the Court strove to place the conviction in context based upon an evaluation of the totality of circumstances, as did the Supreme Court in *John's Vending.*

Under these circumstances, we reject Applicant's argument that the Board was per se prohibited from considering Applicant's earlier conviction. Given the circumstances of this case, in particular the very recent conviction, we cannot conclude that the Board erred in considering the earlier conviction. Moreover, we note that even if the Board had erred in considering the earlier conviction, sufficient evidence exists to support the Board's denial based solely on the recent insurance fraud and conspiracy conviction.

c. *Whether the Board's decision was legally deficient because its credibility determinations were not based on "live" testimony?*

Applicant continues that the Board's credibility determinations should be overturned because they are not based on witness demeanor and because the Board cannot make the requisite credibility determinations as it did not observe her "live" testimony. Applicant maintains that because the Board did not observe her demeanor, pursuant to *Daniels,* it was required to provide objective bases for its

credibility determinations. Applicant clarifies in her reply brief that her position is not that the Board must hear the evidence itself, as she recognizes that in many cases this would be impractical. Instead, she argues that there must be someone who is in a position to make a credibility determination after observing a witness' demeanor.

The Board counters that it was not required to hear live testimony in order to make credibility determinations, and it acted within its authority when it deliberated over the entire record in this matter, including the transcript, and made its determination that Applicant did not possess the requisite good character at this time for licensure as a professional nurse.

Neither case law nor Section 507 of the Administrative Agency Law supports Applicant's position. In *Pellizzeri,* we stated that a "fact finder's observation of the demeanor of a witness is important in determining credibility but this Court has held that administrative adjudicators may determine credibility from the reading of a transcript." *Pellizzeri,* 856 A.2d at 301. Even *Daniels,* which we do not concede applies, does not require that credibility determinations be made based on "live" testimony. While credibility determinations based on a witness' demeanor may have been beneficial in this case, the Board did not err when it simply reviewed the record of the proceedings provided to it.

2. *Whether the Board abused its discretion in concluding, without explanation, that Applicant had not furnished satisfactory evidence that she is of good moral character, can practice nursing with reasonable skill, honesty and safety to patients, and is able to meet the requirements of the profession?*

Applicant essentially argues that the Board, in denying the application, abused

its discretion and acted arbitrarily and capriciously, particularly given the Board's allegedly improper consideration of the irrelevant, fourteen year-old conviction. Applicant focuses on the circumstances surrounding the convictions and her testimony that she has learned from her mistakes. Applicant asserts that, at a minimum, the case must be remanded to the Board with instructions to make the appropriate findings, with adequate discussion, concerning the reasons why Applicant's application should not be granted. Otherwise, the Board must grant the application.

The Board responds that the weight it assigns to evidence offered to mitigate the severity of a penalty is a matter within its discretion. In arguing for a different result, Applicant is essentially asking the Court to reweigh the evidence presented—an act it is not permitted to do. The Board contends that Applicant urges the Court to reach a contrary result, arguing that the previous undisputed convictions of record should not be held against her now, despite the fact that the Board is clearly permitted to consider those convictions. We agree with the Board.

■■■ A board may give greater weight to the seriousness of a respondent's criminal convictions than to mitigating evidence. *Burnworth v. State Bd. of Vehicle Mfrs., Dealers and Salespersons,* 139 Pa.Cmwlth. 21, 589 A.2d 294, 297 (1991). Absent bad faith, fraud, capricious action or flagrant abuse of discretion, a reviewing court will not inquire into the wisdom of an administrative agency's discretionary action or into the details or manner of executing that action. *Slawek v. State Bd. of Med.*

*Educ. and Licensure,* 526 Pa. 316, 586 A.2d 362 (1991). The Court may not reweigh the evidence presented. *Burnworth,* 589 A.2d at 296. The Court, moreover, may not substitute its judgment for that of the board. *See Slawek,* 526 Pa. at 324, 586 A.2d at 366.

Under Section 14(a)(5) of the Law, the Board is authorized to refuse to issue a license to an applicant where the applicant has pled guilty to a felony or crime of moral turpitude, and it is undisputed that Applicant committed such crimes. The crux of Applicant's argument amounts to nothing more than her dissatisfaction with how the Board accorded evidentiary weight. The fact that the Board gave more weight to the seriousness of Applicant's crimes than to the mitigating evidence in her favor does not make its decision an abuse of discretion. When reviewing a decision by the Board, this Court may not reweigh the evidence presented or judge the credibility of witnesses.

Again, we agree with Applicant that the Board's adjudication could be more thoroughly developed as to her testimony regarding her alleged rehabilitation and remorse. Nevertheless, it appears that the Board simply gave more weight to the convictions than it gave to her rehabilitation and remorse, concluding that because of the convictions, she has not met her burden to furnish evidence that she meets the requirements of Section 6 of the Law, including the requirement that she be of good moral character.[9]

Accordingly, we must affirm the order of the Board.[10]

---

**9.** Even if we were to agree with Applicant that the Board's adjudication was deficient in that it lacked sufficient explanation as to how Applicant failed to meet the requirements of Section 6 of the Law, Applicant's recent conviction for insurance fraud and conspiracy is sufficient alone to sustain the Board's denial under Section 14(a)(5) of the Law.

**10.** Nothing herein precludes Applicant from re-applying for licensure at a future date,

## ORDER

NOW, this 28th day of April, 2010, the order of the Bureau of Professional and Occupational Affairs, State Board of Nursing, is hereby affirmed.

should she continue her efforts to establish that she bears the credentials for licensure.