Mardea Freeman,  :
            Petitioner  :
              :
            v.  : No. 1004 C.D. 2017
              : Submitted: June 4, 2018
Bureau of Professional  :
and Occupational Affairs,  :
State Board of Nursing,  :
            Respondent  :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                FILED: July 20, 2018

Mardea Freeman, L.P.N. (Freeman) petitions for review of an adjudication of the State Board of Nursing (Board) that suspended her license for three years, to be served in a five-month active suspension and followed by 31 months of probation. Freeman argues that the Board erred and abused its discretion in imposing this discipline because it relied on facts not supported by the record and disregarded her mitigating evidence.

Freeman has held a practical nursing license in Pennsylvania since July 26, 2013. On December 18, 2013, Freeman was charged with two misdemeanor offenses, theft by deception and criminal conspiracy to commit theft by deception, as a result of an incident at a Home Depot store. She was admitted into an Accelerated Rehabilitative Disposition (ARD) program.

On March 15, 2014, Freeman applied for a renewal of her practical nursing license. On the renewal application, Freeman was asked whether she had

"received … [ARD] as to any felony or misdemeanor ... or do you have any criminal charges pending and unresolved in any state or jurisdiction?" Reproduced Record at 151 (R.R. __). Freeman answered "No." *Id.*

One month later, Freeman was arrested for stealing jewelry and bank account information from a patient. As a result of these charges, Freeman was dismissed from ARD on the Home Depot incident.[1] On October 20, 2014, Freeman was convicted of theft by deception, a first-degree misdemeanor, for using a patient's checking account information to pay Freeman's electric and phone bill. The jewelry theft charge was *nolle prossed*. The trial court sentenced Freeman to 24 months probation and directed that Freeman was "not to be employed taking care of senior citizens." R.R. 149.

On March 27, 2015, the Board issued an order to Freeman to show cause why her license should not be suspended, revoked, restricted and a civil penalty imposed, for her violation of the Practical Nurse Law,[2] and the Criminal History Record Information Act (CHRIA), 18 Pa. C.S. §§9101-9183. Freeman answered the order to show cause and requested a hearing. The Board appointed a Hearing Examiner to conduct a hearing and issue a recommended adjudication.

At the hearing, the Bureau of Professional and Occupational Affairs (Bureau) offered into evidence the order to show cause, Freeman's answer, and the records of Freeman's convictions and sentences. It also introduced a copy of Freeman's license renewal application. The Bureau recommended that Freeman be

---

[1] After being removed from the ARD program, Freeman was convicted of criminal conspiracy to commit theft by deception, a second-degree misdemeanor, and sentenced to six months probation. R.R. 12-13.

[2] Act of March 2, 1956, P.L. (1955) 1211, *as amended*, 63 P.S. §§651-667.8.

2

placed on probation for three years but allowed to continue to work. Notes of Testimony (N.T.), 7/2/2015, at 97; R.R. 124.

Freeman testified on her own behalf. Regarding the Home Depot incident, Freeman explained that a friend had asked her to drive her to Home Depot to return an item for which she did not have a receipt. In that situation, the store required a driver's license. Because her friend did not have her driver's license, Freeman presented her license. While Freeman processed the return, her friend placed shoplifted merchandise into Freeman's car.

Regarding the other criminal episode, Freeman acknowledged that she used a patient's personal financial information to pay two utility bills. She explained:

> Well, at the time, I was raising my son on my own as a single mother. Everything was on the verge of being cut off. You know, I didn't want to have to go back to the shelter. I made a stupid decision to do that.

N.T. at 33; R.R. 60. Freeman acknowledged this did not excuse her action:

> I do regret the --- some of the decision[s] that I've made, because I love my career. I love helping people. I love what I do, and based on the decisions that I've made, it's just jeopardizing my whole career…. But yes, I do regret being here today, in the situation that I'm in today, I mean.

N.T. at 43-44; R.R. 70-71.

Freeman recounted that after graduating from high school, she became involved in an abusive relationship. She moved to a shelter, where she lived for two years. While living at the shelter, Freeman enrolled in a certified nursing assistant (CNA) training program and obtained a CNA license. Her employment enabled her to leave the shelter. Shortly thereafter, Claimant gave birth to a son, for whom she

is solely responsible because the father is incarcerated. Freeman worked several jobs while continuing her education and, in April 2013, earned her practical nursing license.

Freeman testified that she currently cares for two pediatric patients. One of these patients is non-ambulatory and needs assistance with eating, taking medications and toileting. Freeman works with him approximately 47 hours a week. Freeman assists another patient who is on a ventilator with a tracheostomy tube, approximately 16 hours per week at nighttime, administering medication and recording the patient's vital signs.

Freeman offered the testimony of several character witnesses. Her classmate and co-worker testified that Freeman enjoyed a reputation for being hardworking and diligent, explaining "she's always maintained a sense of integrity … always … making sure she has [the patients'] best interests at heart." N.T. at 21; R.R. 48. Several other witnesses attested to Freeman's good character and reputation: Freeman's husband; her brother; her pastor; and her long-time friend.

On November 19, 2015, the Hearing Examiner issued a proposed adjudication. He concluded that Freeman was subject to disciplinary action under authority of the Practical Nurse Law and CHRIA for her convictions for conspiracy to commit theft at Home Depot and theft of property from a patient in her care, which was a serious violation of patient trust.[3] After balancing the seriousness of the

---

[3] Specifically, the Hearing Examiner concluded:

> [Freeman] is subject to disciplinary action under Count One because [Freeman] violated Section 16(a)(5) of the [Practical Nurse Law], 63 P.S. §666(a)(5), by her conviction for Criminal Conspiracy, 18 Pa.C.S. §903, related to Theft By Deception – False Impression, a crime of moral turpitude.
>
> [Freeman] is subject to disciplinary action under Count Two because [Freeman] violated Section 16(a)(5) of the [Practical Nurse Law], 63 P.S. §666(a)(5), because

4

offenses against Freeman's mitigation evidence, the Hearing Examiner recommended that her license be suspended for three years, with the suspension immediately stayed in favor of probation for three years.

The Hearing Examiner advised the parties that the Board would review the proposed adjudication and order. Neither Freeman nor the Bureau filed a brief or exceptions.

On July 26, 2016, the Board adopted the Hearing Examiner's findings of fact and conclusions of law but rejected his recommended discipline. The Board imposed a three-year license suspension to be served by a six-month active suspension followed by 30 months of probation. Freeman petitioned for this Court's review of the Board's adjudication.

---

[Freeman] was convicted of Theft by Deception – False Impression, 18 Pa. C.S. §3922(a)(1), a crime of moral turpitude.

[Freeman] is subject to disciplinary action under Count Three because [Freeman] violated Section 9124(c)(2) of [CHRIA], 18 Pa.C.S. §9124(c)(2), because [Freeman] has been convicted of a misdemeanor related to the practice of the profession.

[Freeman] is subject to disciplinary action under Count Four because [Freeman] violated Section 16(a)(4) of the [Practical Nurse Law], 63 P.S. §666(a)(4), because [Freeman] committed fraud or deceit in securing her admission to such practice by answering falsely on her application for renewal of her license.

[Freeman] is subject to disciplinary action under Count Five because [Freeman] has been [found] guilty of unprofessional conduct under Section 16(a)(8) of the [Practical Nurse Law], 63 P.S. §666(a)(8), because she stole checking account information from a patient.

[Freeman] is subject to disciplinary action under Count Six because [Freeman] violated Section 16(a)(3) of the [Practical Nurse Law], 63 P.S. §666(a)(3), because [Freeman] misappropriated equipment, materials, property, drugs or money from an employer or patient.

Proposed Adjudication, 11/19/2015, at 7-8, Conclusions of Law 4-9; R.R. 282-83 (internal notations omitted).

On appeal, this Court vacated the Board's adjudication. *See Freeman v. Bureau of Professional and Occupational Affairs* (Pa. Cmwlth., No. 1341 C.D. 2016, filed April 20, 2017) (unreported). This Court did so because one of the Board's stated bases for its harsher discipline was unfounded. Specifically, the Board had attributed its harsher sanction to the fact that Freeman was convicted of jewelry theft. However, she was not so convicted. This Court remanded the matter to the Board with instructions "to impose a sanction consistent with findings of fact and conclusions of law that are supported by the record." *Id.*, slip op. at 13.

Following remand, the Board again imposed a three-year suspension to be served by a five-month active suspension followed by 31 months of probation. Board Adjudication, 6/22/2017, at 15; R.R. 353. The Board explained:

> In this case, [Freeman] has demonstrated an escalation in criminal misconduct, from conspiring with another to steal from a home improvement store to personally stealing bank account information from a patient and using that information for her own pecuniary gain. The escalation of misconduct serves as an aggravating factor. The specific crime which [Freeman] committed involved theft from a patient in a nursing home, certainly a very vulnerable individual….
>
> [Freeman] compounded her criminal misconduct by providing false information to the Board when she submitted her licensure renewal application on March 15, 2014. By failing to disclose that she was in an ARD program related to the Home Depot matter on her license renewal application, [Freeman] again demonstrated dishonesty and lack of good moral character.

*Id*. at 13-14; R.R. 351-52. Regarding Freeman's mitigating evidence, the Board stated:

> [Freeman] testified credibly about her personal background and history of housing insecurity, and how she had made a better life for herself and her son by attending nursing school and working in the profession. [Freeman's] fortitude is to be commended;

6

however, it cannot erase the fact that [Freeman] put her needs above the needs of the Majestic Oaks resident from whom she stole – conduct that is antithetical to the nursing profession.

*Id*. at 14-15; R.R. 352-53.  The Board acknowledged that Freeman's character witnesses uniformly attested to her

reputation for honesty and trustworthiness in the community. This mitigating evidence speaks to [Freeman's] ability to rehabilitate herself and not pose a threat to vulnerable patients in the future.

*Id.* at 15; R.R. 353.

On appeal,[4] Freeman raises two arguments.  First, she contends that the Board erred and abused its discretion in suspending her license because, again, the stated factual basis for its discipline conflicts with the record.  Specifically, the Board's statement that Freeman was on ARD when she submitted her license renewal application is incorrect because she entered ARD after she submitted her renewal application.  Second, Freeman contends that the Board failed to consider all of her mitigating evidence in rejecting the Hearing Examiner's recommended discipline, in favor of a harsher sanction.

Section 16 of the Practical Nurse Law authorizes the Board to suspend or revoke a license where the licensee has been convicted of or has pleaded guilty or *nolo contendere* to a crime of moral turpitude.  63 P.S. §666(a)(5).  It also authorizes

---

[4] Our review determines whether there has been an error of law or a violation of constitutional rights, or whether the findings of fact are supported by substantial evidence.  *Bethea-Tumani v. Bureau of Professional and Occupational Affairs*, 993 A.2d 921, 925 n.6 (Pa. Cmwlth. 2010) (citations omitted).  Our review of the Board's disciplinary sanction is deferential, *i.e.,* it is "limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions."  *Id.* (citing *Goldberger v. State Board of Accountancy,* 833 A.2d 815, 817 n.1 (Pa.Cmwlth. 2003) (quoting *Slawek v. State Board of Medical Education and Licensure,* 586 A.2d 362, 365 (Pa. 1991)).

7

a license suspension for any violation of the Practical Nurse Law, such as providing a false answer on a license renewal application. 63 P.S. §666(a)(4).

In her first issue, Freeman argues that the Board erred and abused its discretion by basing its license suspension upon her failure to disclose her ARD on her license renewal application. The Board responds that Freeman waived this issue because she did not file exceptions to the hearing examiner's proposed report. In the alternative, the Board contends that its discipline is otherwise supported by the record and that the mistake about the timing of her ARD constitutes harmless error.

We begin with the Board's waiver argument. The Board's proceedings are governed by the General Rules of Administrative Practice and Procedure (GRAPP), 1 Pa. Code §§31.1–35.251. *See* 49 Pa. Code §21.146. Following the issuance of the hearing examiner's proposed report, the parties may file exceptions. If a party does not file exceptions, Section 35.123 of GRAPP provides, in relevant part:

> *Failure to file a brief on exceptions within the time allowed under §35.211 (relating to procedure to except to proposed report) shall constitute a waiver of all objections to the proposed report.* Objections to any part of a proposed report which is not the subject of exceptions may not thereafter be raised before the agency head in oral argument, or in an application for agency rehearing or reconsideration, and shall be deemed to have been waived.

1 Pa. Code §35.213 (emphasis added).

It is true that Freeman did not file exceptions to the Hearing Examiner's recommended report. Simply, she was not aggrieved by it. In any case, Freeman challenges the Board's stated reasons for imposing its sanction, not the Hearing Examiner's proposed report. We reject the Board's waiver contention and address the merits of Freeman's appeal.

8

On or about March 15, 2014, Freeman submitted a license renewal application to the Board. The following question was on the application:

> Since your initial application or last renewal, whichever is later, *have you* been convicted, found guilty or pleaded nolo contendere, or *received* probation without verdict, or *accelerated rehabilitative disposition (ARD) as to any felony or misdemeanor*, including any drug law violations, *or do you have any criminal charges pending and unresolved* in any state or jurisdiction? You are not required to disclose any ARD or other criminal matter that has been expunged by order of a court.

R.R. 24 (emphasis added). Freeman answered "No," even though criminal charges were pending against her in the Home Depot incident and she was placed into an ARD program two days later. *Id.* at 12-13, 24, 215.

In the order to show cause, the Board charged Freeman with deceit for being untruthful in her answer to the question about her pending criminal charges. In the answer to the order, Freeman stated that she "was unaware" that the Home Depot incident constituted a pending criminal charge, explaining that she thought "being in the ARD Program [meant] her case was the subject of a potential expungement [and] did not require her to respond to the [question] affirmatively." R.R. 155-56. Erroneously, in its adjudication, the Board concluded that Freeman was in an ARD program related to the Home Depot incident at the time she submitted her license renewal application. Board Adjudication, 6/22/2017, at 5, Finding of Fact No. 15; R.R. 343. The record does not support this fact.

This Court has explained that "reversible error requires the determination 'must not only be erroneous, but also harmful or prejudicial to the complaining party.'" *Garner v. Pennsylvania Human Relations Commission*, 16 A.3d 1189, 1200 (Pa. Cmwlth. 2011) (quoting *D.Z. v. Bethlehem Area School*

9

*District*, 2 A.3d 712, 726 (Pa. Cmwlth. 2010)). "[A]n order of an administrative agency will not be disturbed for harmless error." *D.Z.*, 2 A.3d at 725-26.

The Board argues that it was Freeman's untruthful answer, not her being in an ARD program, that guided its exercise of discretion. In determining the appropriate sanction, the Board explained that Freeman "compounded her criminal misconduct by providing false information to the Board when she submitted her licensure renewal application on March 15, 2014." Board Adjudication, 6/22/2017, at 14; R.R. 352. The Board stated that her "criminal convictions and fraud on her application must be met with a sanction appropriate to the severity of her misconduct." *Id.* The Board's decision to sanction Freeman was based on her failure to be truthful on the application.

Importantly, Freeman was required to answer "yes" to the question on the license application regardless of whether or not she was in an ARD program because there were criminal charges pending against her related to the Home Depot incident. She did not do so. Moreover, the Board did not accept, apparently, the statement in Freeman's answer that she did not understand that the charges arising from the Home Depot incident had to be reported on her renewal application. Because it was her failure to answer truthfully that prompted the Board's discipline, Freeman is not prejudiced by the Board's error.

In her second issue, Freeman argues that the Board abused its discretion by not considering all her mitigating evidence, including the facts that she accepted responsibility for her actions and has established a support network in her community. Further, the Board erred in characterizing her failure to disclose her ARD status as an "aggravating factor[.]" Freeman Brief at 18.

10

The Board "exercises considerable discretion in policing its licensees." *Ake v. Bureau of Professional and Occupational Affairs, State Board of Accountancy*, 974 A.2d 514, 519 (Pa. Cmwlth. 2009). The "weight the Board assigns to evidence offered to mitigate the severity of a penalty is a matter within its discretion." *Burnworth v. State Board of Vehicle Manufacturers, Dealers and Salespersons*, 589 A.2d 294, 296 (Pa. Cmwlth. 1991). This Court has explained as follows:

> While [this Court] is required to correct abuses of discretion in manner or degree of penalties imposed, absent a manifestly unreasonable exercise of judgment, we will not substitute our discretion for that of the Board, an administrative body endowed with expertise in matters subject to its jurisdiction.

*Foose v. State Board of Vehicle Manufacturers, Dealers and Salespersons,* 578 A.2d 1355, 1359 (Pa. Cmwlth. 1990).

Section 16(b) of the Practical Nurse Law authorized the Board to revoke or suspend Freeman's license upon holding that she violated Section 16(a) of the Law. 63 P.S. §666(b). The Board imposed a three-year suspension but "[b]ased on the strength of the mitigating evidence presented," it limited the penalty to "a five-month period of active suspension[, with] the remaining 31 months [to] be served on probation." Board Adjudication, 6/22/2017, at 15; R.R. 353. The Board's discipline was authorized by statute.

Nevertheless, Freeman contends that the Board did not consider all of her mitigating evidence. We disagree. The Board acknowledged Freeman's testimony related to her "personal background and history of housing insecurity, and how she had made a better life for herself and her son by attending nursing school and working in the profession." *Id.* at 14; R.R. 352. The Board also considered

11

Freeman's present reputation for honesty and trustworthiness in the community, which it found relevant. The Board found that Freeman had the "ability to rehabilitate herself and not pose a threat to vulnerable patients in the future." *Id*. at 15; R.R. 353.

The Board gave more weight to the seriousness of her crimes than it did to her mitigating evidence. Whether this Court agrees that Freeman, whose evidence of rehabilitation has been credited, should be forced to stop working at her profession for five months matters not. We cannot substitute our judgment for that of the Board. We cannot say that the Board's chosen discipline signifies "a manifestly unreasonable exercise of judgment." *Foose*, 578 A.2d at 1359.

For these reasons, we affirm the Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mardea Freeman, :
                Petitioner :
                   :
        v. : No. 1004 C.D. 2017
                   :
Bureau of Professional :
and Occupational Affairs, :
State Board of Nursing, :
             Respondent :

# **O R D E R**

AND NOW, this 20th day of July, 2018, the adjudication and order of the State Board of Nursing, in the above-captioned matter, dated June 22, 2017, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge