**Richard L. SALTERS, Petitioner**

v.

**PENNSYLVANIA STATE POLICE MUNICIPAL POLICE OFFICERS' EDUCATION AND TRAINING COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 17, 2006.

Decided Nov. 29, 2006.

Carl Marcus, Pittsburgh, for petitioner.

Joanna N. Reynolds, Asst. Counsel and Barbara Christie, Chief Counsel, Harrisburg, for respondent.

BEFORE: FRIEDMAN, Judge, LEADBETTER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Richard L. Salters petitions for review of an adjudication of the Pennsylvania Municipal Police Officers' Education and Training Commission (Commission) revoking Salters' certification as a municipal police officer. The Commission found this certification had been issued in error because it relied, in part, upon a false statement Salters made on his certification application. The Commission held that the false statement alone supported a revocation. Agreeing with the Commission that Salters' misconduct was not justified by the fact that his supervisor advised him to lie, we affirm.

The facts in this appeal are not in dispute. Salters applied for a part-time po-

lice officer position with the Borough of Rankin Police Department. As part of his application for employment, Salters was required to undergo a psychological examination. 37 Pa.Code § 203.11(a)(7).[1] On August 28, 2003, Salters was evaluated by Paul M. Bernstein, Ph.D., a licensed psychologist, who determined that Salters was "a psychological risk" for the position of police officer. When the Chief of Police, Darryll L. Briston, learned about the unfavorable evaluation, he advised Salters to obtain another one. Salters did so and was then evaluated by Peter C. Zubritsky, Ph.D., also a licensed psychologist, who found no psychological impediment to Salters serving as a police officer. Reproduced Record at 8a. (R.R. ___). Salters was then hired by the Rankin Police Department.

On January 9, 2004, Salters completed an application for certification by the Commission.[2] With that application, Salters submitted the psychological evaluation of Dr. Zubritsky that found Salters to be psychologically fit. R.R. 6a–8a. The application questioned whether Salters had undergone "*any other* psychological evaluation in conjunction with an application for police employment within the past year?" R.R. 1a (emphasis added). Sal-

ters answered "no." *Id.* Salters signed the completed application, certifying that it contained "no misrepresentation or falsifications, omissions or concealment of material fact and that the information given [was] true and complete to the best of [his] knowledge and belief. . . ." R.R. 3a.[3] On March 11, 2004, the Commission issued a certification to Salters.

In 2005, the Commission received information that Salters had been evaluated by more than one psychologist in connection with his application for employment with the Rankin Police Department. After reviewing Dr. Bernstein's evaluation that Salters was "psychologically at risk," the Commission's Executive Director informed Salters in writing that the "Commission intends to take action to revoke your certification." R.R. 47a. The stated basis was the Commission's regulation authorizing the revocation of a certification for "[p]hysical or psychological impairment which renders the officer permanently unable to perform his duties." 37 Pa.Code § 203.14(a)(5). Salters was advised that he had a right to an administrative hearing before his certification could be revoked; Salters' other option was to return the certification.

---

1. In relevant part, 37 Pa.Code § 203.11(a)(7) provides:

    [P]ersons who are to be employed as police officers by police departments within this Commonwealth from December 21, 1996, shall:

    * * *

    (7) Be personally examined by a Pennsylvania licensed psychologist and found to be psychologically capable to exercise appropriate judgment or restraint in performing the duties of a police officer.

2. The Commission certifies police officers who have successfully completed a mandatory basic training course or who have received a waiver of basic training from the Commission and successfully completed mandatory in-ser-

vice training; the certification is valid for two years. 53 Pa.C.S. § 2162 (certification). It is unlawful for a municipal police department to hire a non-certified individual as a police officer. 53 Pa.C.S. § 2167.

3. The application warned against providing false or inaccurate information. It stated, in bold type, as follows:

    WARNING TO POLICE OFFICERS AND OFFICIALS—DO NOT SIGN AND SUBMIT THIS FORM IF ANY OF THE INFORMATION WHICH YOU HAVE PROVIDED IS NOT TRUE AND CORRECT

    S.R.R. 135b. The application also advised the applicant of criminal penalties for making an unsworn false statement at 18 Pa.C.S. § 4904.

Salters exercised his hearing right, which prompted the Commission to issue a second notice on September 29, 2005, to add two additional bases for its intended revocation. First, the amended notice alleged that Salters submitted "to the Commission a document that the police officer knows contains false information including [a] fraudulent application" in violation of 34 Pa.Code § 203.14(a)(7). Second, it alleged that because the Commission had issued Salters his "certification in error," the certification could be revoked pursuant to 34 Pa.Code § 203.14(a)(7) and (a)(8).

On November 8, 2005, a hearing was convened on the matter of whether Salters' certification should be revoked. The hearing officer announced that it was her responsibility to hear the evidence and present a proposed report to the Commission for its consideration. The hearing officer explained that the Commissioners would make the final decision in the case.[4] Supplemental Reproduced Record at 3b (S.R.R.___).

The Commission presented the testimony of Dr. Bernstein, who explained the basis for his "at risk" psychological evaluation of Salters. Beverly Young, an administrative officer, also testified for the Commission and stated that the Commission would not certify an individual found to present a psychological risk. Salters, represented by counsel, testified that he was pressured by Police Chief Briston into completing and signing the application with the inaccurate statement. He explained, further, that Briston had also signed the application and was the individual who had actually submitted Salters' certification application to the Commission.

At the conclusion of the hearing, the hearing officer issued her proposed report. She found that the Commission could not revoke Salters' certification for "[p]hysical or psychological impairment that renders the officer permanently unable to perform his duties." 37 Pa.Code § 203.14(a)(5). She reached this conclusion because Dr. Bernstein did not find that Salters was permanently impaired. On the other hand, the hearing officer found that the Commission could revoke Salters' certification under the two regulations cited in the September 29, 2005, notice, i.e., the fraudulent application and certification issued in error. Salters filed exceptions with the Commission, but the Commission adopted the hearing officer's proposed findings of fact and conclusions of law and ordered the revocation of Salters' certification. Salters then petitioned for this Court's review of the Commission's adjudication.

On appeal,[5] Salters presents five issues for our consideration, which have been reordered and consolidated for purposes of our analysis. First, he contends his due process rights were violated because the Commission amended its revocation notice to add two other charges after Salters exercised his right to a hearing. Second,

---

4. This procedure was consistent with the Commission's regulation, which states, in relevant part, as follows:

    (b) A hearing examiner will be appointed by a majority vote of the Commission to preside at the hearing.

    (c) The Commission will review the hearing examiner's recommendation, findings of fact and conclusions of law, and by a majority vote issue a final order. The Commission will specify in writing and forward to all relevant parties by certified mail, return receipt requested, the final order of the Commission.

37 Pa.Code § 203.103.

5. On review, we are limited to determining whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are not supported by substantial evidence. *DiSalvatore v. Municipal Police Officers' Education & Training Commission*, 753 A.2d 309, 313 (Pa.Cmwlth.2000).

he contends that the Commission's findings relevant to the regulations cited in the September 29, 2005, notice are not supported by substantial evidence. Third, Salters contends that he did not receive a "meaningful review" from the Commission because only one of its twenty members has been trained in the law. Fourth, he contends the Commission's revocation was based on a theory of conspiracy or accomplice liability, but the regulations do not authorize revocation for that reason.

■ We consider, first, Salters' argument that he was denied due process of law. The *sine qua non* of due process is "notice and opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause." *Fiore v. Board of Finance and Revenue,* 534 Pa. 511, 517, 633 A.2d 1111, 1114 (1993) (citations omitted). More precisely, the notice must inform the respondent of the charges against him with enough certainty that he may prepare a defense. *Department of Transportation v. Sutton,* 541 Pa. 35, 41, 660 A.2d 46, 48–49 (1995). Salters argues that because the Commission added two charges after he requested a hearing, he was denied due process. In making this argument, Salters relies entirely upon *In Re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968).

*Ruffalo* was a federal disbarment case that was instituted after the attorney in question, John Ruffalo, was disbarred by the Ohio Supreme Court. The United States Supreme Court set aside the federal disbarment because it had been based upon the state disbarment, and the Supreme Court found the state proceeding to be defective under due process. Ruffalo was charged with immoral and unethical conduct, *i.e.,* hiring a railroad employee, Michael Orlando, to solicit persons injured in railroad accidents to become clients of Ruffalo. Ruffalo and Orlando each testified that Orlando did not solicit clients but, rather, served as an accident investigator for Ruffalo. As a result of this testimony, the charges were amended to cite Ruffalo for the immoral and unethical conduct of hiring a railroad employee to investigate accidents that, on occasion, involved his own employer. Ruffalo was disbarred as a result of the additional charge. However, the Supreme Court concluded that it violated due process to lodge this additional charge, explaining as follows:

> The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh.

*Id.* at 551, 88 S.Ct. 1222.

Salters' hearing was governed by the General Rules of Administrative Practice and Procedure, 1 Pa.Code §§ 35.1–35.251.[6] Under these rules, pleadings may be amended up to five days before a hearing starts without approval and later, if directed by the presiding officer. 1 Pa.Code § 35.48[7] However, issues addressed at a

6. The Commission adopted these rules at 37 Pa.Code § 203.101. One difference is that in Commission proceedings, a proposed report of a hearing examiner does not become an adjudication in the absence of filed exceptions. Rather, the Commission must vote on the hearing examiner's recommendation before a final order is issued by the Commission. 37 Pa.Code § 203.103.

7. It states:

   (b) Except as otherwise provided in this subsection, no amendment to a pleading may be filed within 5 days next preceding the commencement of or during a hearing unless directed or permitted by the agency head or the presiding officer after opportunity for all parties to be heard thereon. An amendment in a licensing or certification

hearing with the express or implied consent of the parties "shall be treated as if they had been raised in the pleadings." 1 Pa.Code § 35.49. On the other hand, if evidence "is objected to on the ground that it is not raised by the pleadings," the hearing officer may allow the evidence to be received and the pleading amended if it will not prejudice "the public interest or the rights of any participant." 1 Pa.Code § 35.49(a). The presiding officer may grant a continuance to allow the "objecting participant to meet the new issues and evidence." *Id.*

Although these rules allow generous amendment of pleadings in administrative hearings, this Court has held that it violates due process to allow a pleading to be amended after the record is closed. *Glotfelty v. State Board of Veterinary Medicine,* 133 Pa.Cmwlth. 660, 577 A.2d 238, 239 (1990) (vacating the Board's order and remanding the matter for a hearing on the charges added by amendment). Thereafter, in *White v. State Board of Optometry,* 682 A.2d 404 (Pa.Cmwlth.1996), we held that pleading amendments that expand the scope of charges against a respondent cannot be allowed, except by scheduling additional hearings on the amendments. We held that the burden was not on the respondent to request a continuance of the hearing when the pleading amendment expands the issues, as authorized in 1 Pa. Code § 35.49(a). Further, due process was not satisfied by having the respondent address the merits of the new issues in a post-hearing brief. Id. at 409. Again, we directed a remand for additional fact-finding.

proceeding which reduces the scope of the application may be filed at any time, if permitted by the agency head or the presiding officer.
1 Pa.Code § 35.48(b).

■ It is Salters' position that any amendment to a pleading violates due process, even one made 30 days in advance of the hearing as was the case in the hearing on his certification revocation. To follow Salters' logic, all provisions for pleading amendments set forth in the General Rules of Administrative Practice and Procedure are unconstitutional. The same is true for the provisions in the Pennsylvania Rules of Civil Procedure that allow for pleading amendments, PA. R.C.P. No. 1003, and those in the Federal Rules of Civil Procedure, FED.R.CIV.P. 15. Since these State and Federal rules have been adopted by the courts with the ultimate responsibility for interpreting and applying due process principles, Salters' position that a pleading may not be amended prior to a hearing bears little connection to reality, let alone the law of due process. Salters simply fails to appreciate the well-established precept that due process is not immutable; due process imposes different requirements depending on the circumstances under consideration in the proceeding. *Conestoga National Bank of Lancaster v. Patterson,* 442 Pa. 289, 275 A.2d 6 (1971). The 30 days advance notice to Salters might not satisfy due process in, for example, a complex rate hearing before the Pennsylvania Public Utility Commission. Where the facts at issue are relatively simple, however, 30 days provides ample opportunity to the defendant.

*Ruffalo* provides no support whatsoever for Salters' due process claim. First, *Ruffalo* is a case where the charge against the respondent was essentially manufactured on the spot to fit the evidence.[8] By con-

8. *Ruffalo* should be understood as a vagueness case. The Ohio Bar's standard that attorneys not engage in "immoral or unethical conduct" was used as an empty vessel into which could be poured almost any conduct. At the time Ruffalo hired a railroad employee

trast, the regulations cited to Salters had been adopted long before Salters signed an application with a false statement. Second, *Ruffalo* is factually distinguishable. Mr. Ruffalo received notice of the amended charge only after he gave inculpatory evidence. *Ruffalo*, 390 U.S. at 551, 88 S.Ct. 1222. Here, Salters knew of the additional charges one month before the hearing.[9] At no point did Salters assert that he did not understand the issues in the amended pleading or that he did not have sufficient time to prepare a defense. Instead, Salters did defend, testifying that he was pressured by Police Chief Briston into answering the application falsely. In sum, there is no foundation to Salters' claim that he did not receive notice of the charges adequate to satisfy due process.

Next we address Salters' claim that the findings relevant to the issues raised in the Commission's amended pleading are not supported by substantial evidence. Salters contends the record cannot support a conclusion that he submitted a document with false information or that the Commission issued his certification in error.

Salters claims, first, that "there is nothing on the record to support" the Commission's determination that Salters submitted a document with false information. Salters' Brief at 9. Salters contends that the evidence in the record supports the finding that it was Salters' supervisor, Police Chief Briston, who caused the false information

to be placed on the application and then filed the application. The record may support a finding of wrongdoing by Briston, but it also supports the Commission's finding that Salters submitted an application with false information. Salters admitted that he personally checked the box indicating that he had no other psychological evaluation performed in conjunction with his application for police employment. He also admitted that he reviewed and signed the application, which included a warning not to sign if any of the information were not true and correct. When questioned about the significance of making an unsworn false statement to a governmental authority, he stated as follows:

Q: So you knew that there was false information on the document. You swore under penalty of law that the information was correct and submitted it to [the Commission].

A: Like I said, I knew it was.... I'm not going to sit up here and lie about it. I knew I took two psychologicals. The first one wasn't good and the second one was.

S.R.R. 137b.

■ Salters established his motive for submitting the inaccurate application, namely pressure from his boss. However, this does not relieve Salters of responsibility, and it certainly does not nullify the

---

to work on his own time to explain the technical aspects of railroading, Ruffalo did not know this conduct was immoral or unethical. Indeed, it was conduct "about which reasonable men differ, not one immediately apparent to any scrupulous citizen who confronts the question" and not proscribed in clear terms by the state; accordingly, due process prohibited punishment for the conduct. *Ruffalo*, 390 U.S. at 555–556, 88 S.Ct. 1222. *See also Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 666, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985). By contrast, the Commission's regulation pro-

scribed the offending conduct in clear terms. Further, the application itself warned that providing unsworn false statements to the Commission violated the Pennsylvania Crimes Code.

9. The amended charges conformed to the General Rules of Administrative Practice and Procedure, which allow a "complaint" or other "pleading" to be amended "within 5 days next preceding the commencement of or during a hearing...." 1 Pa.Code § 35.48(b).

substantial evidence that supports the Commission's finding that Salters signed the application, certifying that it was accurate when he knew it was not. It is of no moment that Salters did not personally mail the application; he knew that it was submitted by the Police Chief Briston.

■ Salters also challenges the Commission's finding that Salters' certification was issued in error as not supported by substantial evidence. Beverly Young, the Commission's administrative officer, testified that the Commission would not have issued Salters' certification if Dr. Bernstein's evaluation had been part of his application. This testimony provided the evidentiary support for the Commission's finding that the certification was issued in error. Salters' claim of lack of substantial evidence is unavailing.[10]

Next, we consider Salters' argument that he did not receive a "meaningful review" from the Commission. Salters explains that in his exceptions to the hearing officer's proposed report, he raised "nu-merous issues of law, including issues under the Pennsylvania Constitution and [the United] States Constitution. Meaningful review of these exceptions could be performed only by persons trained in law." Salters' Brief at 8. Because only one of the twenty members of the Commission was legally trained,[11] Salters asserts that he did not receive a meaningful review of his exceptions.

The legislature designed the composition of the twenty-member Commission, and Salters does not contend that the composition failed to follow the statute. To find in Salters' favor, therefore, we would have to find the statute unconstitutional, even though the statute is presumed to be constitutional. *Commonwealth v. Means,* 565 Pa. 309, 315, 773 A.2d 143, 147 (2001). Salters misunderstands the role of an agency head, which is to superintend the agency's activities,[12] not just conduct adjudicatory hearings from time to time that arise in the course of the agency's activities.[13] In any case, the legislature has

---

**10.** Salters argues that the charge of "certification issued in error" is merely redundant of the charge that he submitted a false application. He does not explain this argument and it will not be considered. Two separate regulations were cited, and evidence was presented that related to each regulation.

**11.** By way of background, the Commission is comprised of twenty members. The following individuals are a member by virtue of their office: the Commissioner of the Pennsylvania State Police, the Secretary of Community and Economic Development, the Attorney General and the police commissioner of a city of the first class or his designee.

Two members are appointed by the President pro tempore of the Senate and the Speaker of the House of Representatives each. Finally the following members are appointed by the Governor: a borough official, a first class township official, a second class township official and a city official; four incumbent chiefs of police from the various municipalities of this Commonwealth, at least one to be a chief of a borough police department, at least one to be a chief of a township police department and at least one to be a chief of a city police department; one Federal Bureau of Investigation special agent-in-charge; one educator qualified in the field of law enforcement; one member representing the public at large; two noncommissioned police officers; and a director of one of the certified training schools. 53 Pa.C.S. § 2163.

**12.** The Commission has been directed to "establish and administer the minimum courses of study for basic and inservice training for police officers...." 53 Pa.C.S. § 2164(1). The Commission had numerous duties that range from qualifying schools and instructors, 53 Pa.C.S. § 2164(2) and (3), to establishing background investigation requirements for police officers, 53 Pa.C.S. § 2164(7).

**13.** Were we to accept Salters' premise, every agency head would have to be a lawyer, which might be welcomed by the Pennsylvania bar, but it is a concept without any foundation in due process.

established boards of non-lawyer members that do nothing but conduct hearings, such as the Workers' Compensation Appeal Board[14] and the Board of Claims.[15] There is no precedent for Salters' theory that only agency heads who are attorneys may adjudicate administrative hearings.

■ As noted by the Commission, "meaningful review" is a concept that developed in federal jurisprudence and stands for the proposition that an administrative agency must set forth the basis of its order with sufficient specificity to permit meaningful review by the appellate courts. *See, e.g., Dia v. Ashcroft,* 353 F.3d 228, 243 (3d Cir.2003).[16] "Meaningful review" is not a concept that applies to the agency hearing itself. Id. at 242. With respect to Pennsylvania administrative practice and procedure, our Supreme Court has likewise stated that an "agency opinion needs to contain sufficiently detailed findings of fact ... so that the Commonwealth Court can perform a meaningful review." *Daniels v. Workers' Compensation Appeal Board (Tristate Transit),* 574 Pa. 61, 81, 828 A.2d 1043, 1055 (2003).

■ Salters' "meaningful review" argument does not fit here. First, Salters does not claim the Commission's factual findings were not clear, thereby impeding this Court's ability to review the adjudication. Second, the forum for "meaningful review" of Salters' constitutional arguments, as noted by the Supreme Court in *Daniels,* is this Court because our review of purely legal questions is plenary. Id. at 67, 828 A.2d 1043, 878 A.2d at 1046–1047. Accordingly, the constitutional issues raised by Salters do receive review by those trained in the law, *i.e.,* the judges of this Court. Due process is satisfied when the courts are able to conduct meaningful review of a final order of an agency, *Dia,* 353 F.3d at 243, and it is satisfied here.

In Salters' final argument, he contends that the Commission revoked his certification by relying on legal theories of conspiracy, accomplice liability or vicarious liability. He contends that the regulation does not authorize a revocation on these bases.

■ The Commission's adjudication was based entirely on the actions and admissions of Salters and Salters alone. The only mention of another person's liability came at the hearing and from Salters himself, who testified that Police Chief Briston pressured him into submitting a fraudulent application. This fact, however, did not relieve Salters of the responsibility to submit a truthful certification application to

---

**14.** *See* Section 441 of the Administrative Code of 1929, Act of April 9, 1929, *as amended,* 71 P.S. § 151 ("The Workmen's Compensation Appeal Board shall consist of at least three appointed members, of whom the Governor shall designate one as chairman.").

**15.** *See* 62 Pa.C.S. § 1721(b)(Composition of the Board shall consist of an attorney, a civil engineer and a citizen of the Commonwealth).

**16.** Pennsylvania's Administrative Agency Law imposes similar requirements on adjudications issued under Section 507 of the Administrative Agency Law, 2 Pa.C.S. § 507. Under 2 Pa.C.S. § 507, adjudications "shall be in writing, shall contain findings and the reasons for the adjudication." The absence of such a reasoned adjudication could preclude a court from conducting meaningful appellate review, thus implicating the constitutional guarantee of a "right of appeal ....from an administrative agency to a court of record or to an appellate court...." Pa. Const. art. V, § 9.

Here, the Commission's adjudication is well reasoned and contains "sufficient indicia" that it undertook an individualized determination. The decision and order as adopted by the Commission summarized the relevant evidence, made the necessary findings of fact and conclusions of law and explained the rationale for the decision.

the Commission. The Commission did not rely on vicarious liability to hold Salters liable; it relied upon Salters' actions. Because Salters' conspiracy theory argument lacks a foundation in the Commission's adjudication, it must fail.

For these reasons, the order of the Commission is affirmed.

### ORDER

AND NOW, this 29th day of November, 2006, the order of the Pennsylvania Municipal Police Officers' Education and Training Commission dated March 9, 2006 in the above captioned matter is hereby affirmed.