# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jamie Seibert Thim, R.N., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 916 C.D. 2018 |
| | : | ARGUED: June 6, 2019 |
| Bureau of Professional and | : | |
| Occupational Affairs, State | : | |
| Board of Nursing, | : | |
| Respondent | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                         FILED: July 24, 2019

Jamie Seibert Thim (Licensee) petitions for review of a July 2, 2018 final adjudication and order of the State Board of Nursing (Board), imposing a three-year term of probation and placing conditions on her ability to practice nursing. Licensee argues on appeal that the Board's findings of fact are not supported by substantial evidence, the Pennsylvania Department of State (Department) failed to demonstrate Licensee violated The Professional Nursing Law (Nursing Law),[1] and the Department's expert was not qualified to render the opinion stated. After thorough review, we reverse.

---

[1] Act of May 22, 1951, P.L. 317, *as amended*, 63 P.S. §§ 211–225.5.

## Background

Licensee is a registered nurse licensed to practice in the Commonwealth of Pennsylvania. Notes of Testimony (N.T.), 8/21/17, at 149. She carries a school nurse certification and is employed as a nurse coordinator in the Bensalem Township School District (District). *Id.* at 26, 149. In June 2016, Licensee was arrested for driving under the influence (DUI). *Id.* at 172. Following that arrest, she successfully completed an Accelerated Rehabilitative Disposition (ARD)[2] program. *Id.* at 175.

As a result of Licensee's DUI, the Department issued an order compelling Licensee to submit to a mental and physical examination by board-certified psychiatrist Dr. Pogos Voskanian for the purpose of determining whether Licensee was "unable to practice professional nursing with reasonable skill and safety by reason of mental or physical illness or condition or dependence upon alcohol . . . ."[3] N.T., 8/21/17, Ex. C-7 at 1. To that end, Dr. Voskanian met with Licensee on January 23, 2017 for approximately four and one-half hours. *Id.*, Ex. C-2 at 1. He further reviewed Licensee's medical records and a character reference from the District. *Id.*

Dr. Voskanian's written report indicated Licensee had a history of depression which began with the death of her brother at age 23 following a 12-year battle with

---

[2] ARD is a program whereby, upon successful completion of the program's requirements, an offender's record will be expunged. *See* Pa.R.Crim.P. Chapter 3.

[3] Section 14(a) of the Nursing Law relevantly provides that the Board may refuse, suspend, or revoke a nursing license if it finds that the licensee is unable to practice nursing with reasonable skill and safety to patients by reason of a physiological or psychological dependence upon alcohol. 63 P.S. § 224(a).

2

cancer. *Id.* at 3, 7. Licensee was 19 at the time.[4] *Id.* at 3. She did not treat her depression with medication but began to intermittently binge drink "to cope with her emotions." *Id.* at 7. Dr. Voskanian noted that at age 22 Licensee dated a gentleman who tended bar at the restaurant she managed.[5] *Id.* at 3. This individual would consume three or four beers a night three or four nights per week. *Id.* The relationship ended when he enlisted in the Army. *Id.*

Licensee experienced no significant symptoms of depression until after the birth of her third child in 2014. *Id.* at 7. Her primary care physician prescribed an antidepressant, which has been effective in treating her depression. *Id.* at 8. However, due to marital problems which began around this time, Licensee's alcohol consumption increased from one or two glasses two or three days a week to two or three glasses per night four days a week. *Id.* at 10, 16.

Licensee admitted getting "real drunk" at a party on June 19, 2016, after which she hit a parked car with her vehicle. *Id.* Licensee's DUI charge stemmed from that incident. *Id.* Licensee advised Dr. Voskanian of two occasions after her DUI during which she consumed alcohol – once on vacation at the beach and once at Christmas. *Id.* Licensee related that she and her husband have experienced marital difficulties; however, they are engaged in therapy and their relationship is "much better" following her DUI. *Id.* at 4.

Subsequent to his January 23, 2017 interview with Licensee, Dr. Voskanian received medical records from Licensee's primary care physician that indicated Licensee was treated in an emergency department in New York after consuming

---

[4] Licensee was 39 years old on the date of Dr. Voskanian's evaluation. N.T., 8/21/17, Ex. C-2 at 2.

[5] Licensee testified she was 20 at the time of this relationship. N.T., 8/21/17, at 183.

3

alcohol in a bar and losing consciousness. *Id.* at 14. Dr. Voskanian contacted Licensee to discuss the incident, which she had not disclosed during the interview. *Id.* Licensee advised she had consumed two or three drinks but suspected they were laced with another substance. *Id.*

Dr. Voskanian's evaluation of Licensee and analysis of her medical records led him to conclude that Licensee met the criteria for diagnosis of depression and alcohol use disorder. *Id.* at 16. Dr. Voskanian did not identify those criteria in his report. He opined that, in order for Licensee to continue practicing her profession safely, she would need to engage in monitoring through the Professional Health Monitoring Program (PHMP).[6] *Id.* at 17. Dr. Voskanian's opinion was expressed to a reasonable degree of medical certainty. *Id.*

On May 5, 2017, the Department issued Licensee a one-count Order to Show Cause (Order) why her license should not be suspended, revoked, or otherwise restricted under Section 14(a) of the Nursing Law. *Id.*, Ex. C-4 at 2. The Order directed Licensee to respond to the charge by filing a written answer within 30 days. *Id.* at 4. Licensee filed an answer denying the allegations and arguing that her past "derelictions" were not relevant to her present ability to perform nursing duties as required. *Id.*, Ex. C-5 at 2.

A hearing before a Hearing Examiner was conducted on August 21, 2017. The Department presented the testimony of Dr. Voskanian. Licensee testified on her own behalf and presented the testimony of several character witnesses.

---

[6] The PHMP of the Bureau of Professional and Occupational Affairs (BPOA) assists professionals suffering from a mental or physical disorder, such as substance abuse, in obtaining treatment and monitoring to ensure they can safely practice their licensed professions. Pennsylvania Department of State Professional Health Monitoring Programs, https://www.dos.pa.gov/ProfessionalLicensing/OtherServices/ProfessionaHealthMonitoringProg rams/Pages/default.aspx (last visited July 22, 2019).

The parties stipulated to Dr. Voskanian's expertise as a board-certified psychiatrist. *Id.* at 45. Dr. Voskanian testified that the bulk of his practice from 2000 to the present is in the area of substance dependence, rehabilitation, and detoxification. *Id.* at 54. During that time, he has evaluated thousands of patients for drug and alcohol dependency. *Id.* On the basis of this testimony, the Hearing Examiner accepted, without objection, Dr. Voskanian as an expert in psychiatry, including the diagnosis and treatment of individuals suffering from drug and alcohol dependency. *Id.* at 54.

Dr. Voskanian testified that Licensee's depression diagnosis was based on her medical records which indicated a long history of chronic depression for which she had been prescribed medication. *Id.* at 58-59. Dr. Voskanian felt the dosage prescribed for Licensee for this condition was "much higher than average," although he later acknowledged it was within the standard of care for her medical condition. *Id.* at 59, 85. While Licensee "presented well" during her interview with Dr. Voskanian, her symptoms and degree of depression, chronic marital problems, and an existing diagnosis of depression provided a sufficient basis with which to diagnosis Licensee with depression. *Id.* at 60.

Dr. Voskasian's diagnosis of alcohol use disorder was based on a number of factors. Licensee admitted to having consumed alcohol in the past, and acknowledged she drinks to cope with emotional stress. *Id.* at 61. Licensee's self-reported consumption of alcohol – two to three drinks, a few times per week – was contradicted by Licensee's medical records, which indicated she drank daily. *Id.* at 62. Licensee told Dr. Voskanian that, following her DUI, she only drank twice – once on Christmas Day and "small amounts" during the summer at the beach. *Id.* This was also belied by the medical records provided by Licensee's primary care

5

doctor, which indicated she consumed alcohol on a daily basis and drank to the point of unconsciousness when visiting New York with a friend. *Id.* at 63. This incident required treatment at a local emergency room. *Id.* at 65. The New York trip took place approximately six months after Licensee's DUI and six weeks prior to her interview with Dr. Voskanian. *Id.* at 64. When Dr. Voskanian called Licensee to inquire about the discrepancy, Licensee speculated that someone drugged her drink. *Id.*

Licensee's failure to disclose the incident in New York and the conflict between her self-reported levels of drinking and the information captured in her medical records led Dr. Voskanian to opine she abused alcohol. *Id.* at 65. Licensee's depression was deemed not as critical, as long as it was treated professionally. *Id.* However, Dr. Voskanian believed Licensee was consuming alcohol to combat her depression. *Id.* On the basis of his interview of Licensee and a review of her medical records, Dr. Voskanian reiterated his opinion that, within a reasonable degree of medical certainty, Licensee was not able to safely practice professional nursing, and her alcohol use was in need of professional monitoring and treatment. *Id.* at 64-66.

During cross-examination, Dr. Voskanian acknowledged that his expert report did not explicitly track the language in Section 14(a) of the Nursing Law and provide that Licensee was unable to practice nursing "with reasonable skill and safety to patients" by reason of a physical or mental illness, or condition or physiological or psychological dependence on drugs or alcohol. *Id.* at 77. Dr. Voskanian did not believe Licensee had a physiological dependence on alcohol. *Id.* at 112. When asked if Licensee had a psychological dependence on alcohol, Dr. Voskanian initially replied in the affirmative, but then stated he could "not be certain about that aspect." *Id.* at 110-11. However, because Licensee admitted she drank "to deal with

6

her emotional problems," Dr. Voskanian felt she had a "psychological need" to drink alcohol. *Id.* at 112. Dr. Voskanian acknowledged his opinion was influenced by Licensee's having dated a bartender with alcohol issues nearly two decades prior, and thus having "a history of interest in someone who had a drinking issue. And then in 2016, she had a DUI." *Id.* at 99. He reasoned that people are generally attracted to people "with whom we share interests." *Id.* at 98.

Dr. Voskanian further relied on the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-V). *Id.* at 113. He felt Licensee's DUI fulfilled one of the criteria for alcohol use disorder. *Id.* Dr. Voskanian did not identify the other criteria upon which he based his diagnosis that Licensee suffered from an alcohol use disorder. Dr. Voskanian acknowledged that psychological dependence on alcohol is not a disorder identified in the DSM-V. *Id.* at 112.

Dr. Voskanian conceded that Licensee was probably competent to practice nursing on the date he testified. However, he considered it his duty to recommend monitoring for those individuals who evidenced a problem with drinking, "even if they didn't kill anybody yet." *Id.* at 117. Although Licensee "may be fine," monitoring was required because of the risk "that an event can take place." *Id.* at 88. Dr. Voskanian considered the future risks of Licensee's behavior, her long history of alcohol use, and her minimization of that use, and came to the conclusion that, based on his professional judgment, monitoring was required. *Id.* at 117-18.

Licensee testified she has worked for the District as a nurse since 2012. *Id.* at 168. As part of her work duties, she dispenses medications such as insulin when prescribed by the individual student's primary care physician. *Id.* at 193. Licensee concurrently works part-time as a nurse for Sesame Place. *Id.* at 156. In this position, she treats guests of the park and dispenses over-the-counter medication

7

based on the standing orders of the park's physician. *Id.* at 192. In 2016, she received an award from Sesame Place recognizing "five years of outstanding service and dedication." *Id.* at 161. As to her work performance within the District, Licensee testified she has never received a rating of less than proficient in any of the categories for which she is evaluated. *Id.* at 169.

Licensee was diagnosed with postpartum depression following the birth of her third child in January 2014. *Id.* at 177, 188. She treats that condition with an antidepressant. *Id.* at 178. However, based on Dr. Voskanian's advice that the dosage was too high, Licensee sought treatment with a psychiatrist to determine if reducing the dosage was appropriate. *Id.* at 189. Licensee testified she was prescribed Klonopin for anxiety, but she was not taking it as of the date of the hearing. *Id.* at 208. Prior to her DUI, Licensee was in the habit of drinking a glass of wine at night while cooking dinner. *Id.* at 179. Licensee testified she "at the max" drank three or four times a week. *Id.* She stopped drinking after her DUI, which she considered a wakeup call. *Id.* at 180. Licensee did admit to drinking on three occasions after her DUI, once at the beach, once at Christmas, and again when visiting New York with a friend. *Id.* While in New York, Licensee had "two to three drinks." *Id.* at 181. She believed "someone put something into [her] drink," because she later woke up in an emergency room with her wedding band and engagement ring missing. *Id.* Licensee acknowledged she and her husband have had marital difficulties in the past. *Id.* at 179. However, she stated their relationship has improved. *Id.* at 182.

Licensee testified she was honest with Dr. Voskanian and had nothing to hide. *Id.* She denied minimizing any of her behavior during the interview with Dr.

Voskanian, and disagreed with Dr. Voskanian's testimony that she engaged in binge drinking. *Id.* at 183-84.

With respect to alleged inconsistencies in her reported consumption of alcohol, Licensee testified that she did not report the trip to New York because she was responding to the "very specific" question of how soon after her DUI had she consumed alcohol. *Id.* at 194. She admitted to drinking one month after her June 2016 DUI while vacationing at the beach with her family. *Id.* When Dr. Voskanian asked Licensee on January 23, 2017, when she had last consumed alcohol, Licensee's answer to that specific question was Christmas. *Id.* Dr. Voskanian did not inquire about "anything in between." *Id.*

Thomas Evert (Dr. Evert), a principal at one of the District's middle schools, testified that Licensee is a "great nurse." N.T., 8/21/17, at 26. Licensee supervises the nurses assigned to nine District schools, as well as those employed at local Catholic schools. *Id.* at 27. Licensee has distinguished herself in that capacity and Dr. Evert has never observed Licensee at work in a condition where she was unable to perform her job responsibilities. *Id.* Licensee was very forthcoming about her DUI, and her personal life has never interfered with her work responsibilities. *Id.* at 30. During the time Licensee was charged with DUI, she continued to perform her job duties in a professional manner. *Id.* at 31. Dr. Evert was instrumental in hiring Licensee, and he would hire her again "in a heartbeat." *Id.* at 31-32.

Tammy Wood-Moghal, Licensee's supervisor at the District, likewise testified that Licensee is an asset to the nursing department and she manages her personal and work responsibilities well. *Id.* at 141. Ms. Wood-Moghal stated that, if contacted for a professional reference, she would "absolutely" recommend Licensee for a job. *Id.* Ms. Wood-Moghal did not perceive that Licensee's work

performance was affected by her alcohol use and Ms. Wood-Moghal was not concerned that Licensee could not properly perform her nursing duties. *Id.* at 142.

Licensee's husband, Michael Thim, testified that, while their relationship had its difficulties after the birth of their third child, he and Licensee were communicating much better. *Id.* at 216. He asserted that at no time was Licensee drinking every day and she was not an alcoholic. *Id.* at 217, 221. Mr. Thim acknowledged Licensee has very infrequently consumed alcohol on a social basis after her June 2016 DUI, however, he has not seen her intoxicated since then. *Id.* at 226.

In a Proposed Adjudication and Order dated February 2, 2018, the Hearing Examiner found that the Commonwealth established by a preponderance of the evidence, through the competent expert testimony of Dr. Voskanian, that Licensee suffered from depression, anxiety, and an alcohol use disorder and, consequently, she was not able to practice nursing with reasonable skill and safety absent a monitoring program. Reproduced Record (R.R.) at 334a.

The Hearing Examiner was guided, in part, by Licensee's "evolving recollection" of her alcohol use and failure to disclose the New York trip to Dr. Voskanian. *Id.* at 333a. This failure, and Licensee's explanation for not reporting it, that she did not believe it related to her alcohol consumption, undermined Licensee's credibility. *Id.*

The Hearing Examiner cited Dr. Voskanian's opinion that Licensee had a "psychological dependence on alcohol" and she "experience[d] a need to drink alcohol in order to deal with her emotional issues." *Id.* at 323a. The Hearing Examiner found that Licensee was diagnosed with depression and an alcohol use disorder under the DSM-V. *Id.* The Hearing Examiner acknowledged that neither

10

Dr. Voskanian's report nor his testimony identified the DSM-V criteria upon which he relied to determine Licensee suffered from an alcohol use disorder. R.R. at 331a. Similarly, Dr. Voskanian did not specifically establish how Licensee's history of alcohol use in conjunction with her social, medical, legal and mental health history satisfied the diagnostic criteria under the DSM-V for an alcohol use disorder. *Id.* Despite these omissions, the Hearing Examiner found the substantive record supported Dr. Voskanian's diagnosis. *Id.*

The Hearing Examiner recommended that Licensee's nursing license be suspended indefinitely, with the suspension stayed in favor of probation, subject to Licensee's participation in the PHMP's Disciplinary Monitoring Unit (DMU).[7] *Id.* at 334a. Per the terms of the Proposed Order, Licensee was subject to an evaluation of her fitness to practice nursing and required to comply with any treatment recommendations resulting from the evaluation. *Id.* at 339a-41a. The Hearing Examiner mandated Licensee's attendance at any recommended support group programs, directed she abstain from the use of alcohol in any form, and required she undergo random drug and alcohol screening. *Id.* at 341a-43a. Additionally, the Hearing Examiner restricted Licensee from practicing nursing without PHMP approval and direct supervision. *Id.* at 343a-45a. Any violation of the Order would result in activation of a three-year suspension of Licensee's license to practice nursing. *Id.* at 346a. The Hearing Examiner did not recommend the imposition of costs of prosecution. *Id.* at 335a.

---

[7] The DMU refers licensees suffering from a mental or physical disorder, such as a substance abuse disorder, for appropriate treatment and provides monitoring to ensure that participants remain capable of safely practicing their licensed profession. Pennsylvania Department of State Disciplinary Monitoring Unit General Information. https://www.dos.pa.gov/ProfessionalLicensing/OtherServices/ProfessionaHealthMonitoringProg rams/Pages/Disciplinary-Monitoring-Unit-General-Information.aspx (last visited July 22, 2019).

The Commonwealth filed exceptions to the Proposed Adjudication and Order, challenging the Hearing Examiner's recommendation that Licensee not pay the costs of prosecution. R.R. at 352a-53a. Licensee also filed exceptions to the Proposed Adjudication and Order, arguing the record did not support the factual or legal conclusion that she suffered from a drug or alcohol use disorder and was unable to safely practice nursing without a monitoring program, particularly given the lack of evidence demonstrating Licensee ever performed her duties while impaired. *Id.* at 357a-58a.

The Board issued a Final Adjudication and Order on July 2, 2018, in which it adopted the Hearing Examiner's findings of fact and conclusions of law. Supplemental Reproduced Record (S.R.R.) at 469b. With regard to the Commonwealth's exceptions, the Board felt that, given Licensee's cooperation throughout the proceedings, the imposition of prosecution costs would be inappropriate. *Id.* at 470b. As to Licensee's exceptions, the Board noted her failure to provide a competing expert opinion and her lack of candor with Dr. Voskanian about the extent of her alcohol consumption. *Id.* Dr. Voskanian's diagnosis was expressed to a reasonable degree of medical certainty and, in the absence of evidence to refute his opinion, the Board determined that Licensee's exceptions lacked merit. *Id.* The fact that no harm had come to one of Licensee's patients was of no moment. *Id.* at 470b-71b. The Board was not obligated to wait until harm came to a patient before taking action given Licensee's diagnosis with a "psychological or physiological dependence upon alcohol." *Id.* at 471b.

The Board indefinitely suspended Licensee's nursing license, but immediately stayed the suspension in favor of a three-year probationary period. *Id.* at 473(b). The Final Order contained the same terms and conditions as those set forth in the

12

Hearing Examiner's Proposed Order. Licensee appealed to this Court and filed a Petition for Stay. Licensee's Petition was denied on the basis Licensee failed to show that, without the requested relief, she would suffer irreparable harm.

## Issues

On appeal,[8] Licensee generally argues the Board's findings of fact are not supported by substantial evidence and the Department failed to prove Licensee violated Section 14(a) of the Nursing Law. Finally, Licensee challenges Dr. Voskanian's expert qualifications and fitness to render the opinion stated.

The Department responds that substantial evidence supports the Board's finding that Licensee suffers from depression and alcohol use disorder and Dr. Voskanian's conclusion that it is not safe for Licensee to practice nursing without monitoring. Further, the Department argues that Licensee waived her argument relative to Dr. Voskanian's qualifications as an expert as she raises this issue for the first time on appeal and she stipulated to his qualifications at the August 21, 2017 hearing.

## Discussion

### A. Waiver

First, we will address the Department's waiver argument.

Practice and procedures before agencies of the Commonwealth, including the Board, are governed by the General Rules of Administrative Practice and Procedure

---

[8] Our standard of review is limited to determining whether the findings of fact are supported by substantial evidence, whether there has been an error of law, or whether there has been a violation of constitutional rights. *Bethea-Tumani v. Bureau of Prof'l and Occupational Affairs, State Bd. of Nursing*, 993 A.2d 921, 925 n.6 (Pa. Cmwlth. 2010). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992).

13

(GRAPP). 1 Pa. Code §§ 31.1 – 35.251. Section 35.213 of GRAPP provides, in relevant part:

> Failure to file a brief on exceptions [to the proposed report] . . . shall constitute a waiver of all objections to the proposed report. Objections to any part of a proposed report which is not the subject of exceptions may not thereafter be raised before the agency head in oral argument, or in an application for agency rehearing or reconsideration, and shall be deemed to have been waived.

1 Pa. Code § 35.213. Section 703 of the Administrative Agency Law[9] and Pa.R.A.P. 1551(a) provide that this Court may not review on appeal any issue not raised before the agency. *See Niles v. Dep't of Transp.*, 674 A.2d 739, 741 (Pa. Cmwlth. 1995).

Licensee argues the following in her Brief on Exceptions: 1) the record does not support a factual or legal conclusion that, as of the date of the August 21, 2017 hearing, Licensee suffered from a drug or alcohol use disorder or that she was incapable of safely practicing her profession without monitoring; 2) the Department presented no evidence that Licensee met any criteria for an alcohol use disorder subsequent to January 23, 2017, the date of her interview with Dr. Voskanian; 3) the Department failed to prove the elements of Section 14(a) of the Nursing Law; 4) the Hearing Examiner committed an error of law by rendering his decision based on facts not in evidence; and 5) Dr. Voskanian's opinion that Licensee suffers from a psychological dependence on alcohol is not supported by the evidence. Certified Record (C.R.), Item No. 17.

Licensee did not challenge Dr. Voskanian's qualifications as an expert or suggest he was incompetent to render an opinion. Disagreement with the opinion Dr. Voskanian rendered does not constitute a challenge to his qualifications to

_____
[9] 2 Pa.C.S. § 703.

14

furnish that opinion. Furthermore, as the Department notes in its appellate brief, at the August 21, 2017 hearing, Licensee stipulated to Dr. Voskanian's expertise as a board-certified psychiatrist and she raised no objection when the Hearing Examiner accepted Dr. Voskanian as an expert in psychiatry, including the diagnosis and treatment of individuals suffering from drug and alcohol dependency. Licensee acknowledged this stipulation in her Proposed Findings of Fact and Conclusions of Law filed after the hearing. C.R., Item No. 12, at 2.

The Department is correct that Licensee raised the issue of Dr. Voskanian's expert qualifications for the first time on appeal. Consequently, we conclude that issue is waived.

### B. DSM-V Criteria

Next, Licensee argues the Board's findings of fact are not supported by the record. Specifically, Licensee challenges the Board's findings that she suffered from an alcohol use disorder and that she was unable to practice professional nursing with reasonable safety to her patients as a result of her alcohol use disorder. Licensee contends Dr. Voskanian failed to identify any criteria in the DSM-V that justify his determination that she suffered from an alcohol use disorder. We agree.

In determining that Licensee was unable to safely practice nursing, the Hearing Examiner relied on Dr. Voskanian's opinion that she suffered from an alcohol use disorder. The Hearing Examiner acknowledged that Dr. Voskanian failed to identify in his written report the DSM-V criteria upon which he relied to make this diagnosis. This omission was repeated in Dr. Voskanian's testimony, although he suggested Licensee's DUI met one criterion under the DSM-V. Nevertheless, the Hearing Examiner found that the substantive record supported a "diagnostic finding of an [a]lcohol [u]se [d]isorder" based on the frequency and

15

amount of Licensee's alcohol consumption, particularly during the period during which she experienced marital difficulties, and Licensee's use of alcohol to cope with her emotional problems.

Significantly, the Hearing Examiner also failed to set forth the DSM-V criteria for alcohol use disorder in his Proposed Adjudication and Order. It is not clear what those criteria might be, which facts in the record demonstrate Licensee has met those criteria, or whether the Hearing Examiner even knew what those criteria are. The Hearing Examiner merely accepted Dr. Voskanian's opinion that Licensee suffered from an alcohol use disorder. For its part, the Board adopted the Hearing Examiner's findings of fact and conclusions of law, and its Final Adjudication and Order provides no more illumination on this subject than does the Hearing Examiner's proposed resolution.

The Board likewise predicates its suspension of Licensee's nursing license on Dr. Voskanian's diagnosis of an alcohol use disorder under the DSM-V, despite his utter failure to articulate the criteria required for that diagnosis and to explain how Licensee's behavior met those criteria. Rather than explaining the clinical basis for his diagnosis, Dr. Voskanian linked a decades-old relationship, and the death of Licensee's brother 20 years earlier, to her present condition and concluded she suffers from an alcohol use disorder. His reasoning that Licensee's DUI at age 38 was related to her having dated an alcoholic bartender while in her college years is unsupportable at best. Dr. Voskanian's opinion can only be read as implying that Licensee abuses alcohol because she previously dated someone who abused alcohol. Licensee's more recent use of alcohol during periods in which she suffered untreated post-partum depression and marital difficulties is similarly of little moment, as Dr. Voskanian never testified how or if these behaviors fulfilled the DSM-V criteria.

16

In light of the above, and having considered the evidence presented, the finding that Licensee suffers from an alcohol abuse disorder is not supported by substantial evidence.

### C. Section 14(a) of the Nursing Law

Finally, we address Licensee's argument that the Department failed to prove Licensee violated Section 14(a) of the Nursing Law, which pertinently authorizes the Board to refuse, suspend, or revoke any license if "[t]he licensee is unable to practice professional nursing with reasonable skill and safety to patients by reason of mental or physical illness or condition **or physiological or psychological dependence upon alcohol** . . . so long as such dependence shall continue." 63 P.S. § 224(a) (emphasis added).

It is undisputed that Dr. Voskanian did not diagnose Licensee with a physiological dependence upon alcohol. As to a *psychological* dependence on alcohol, the Hearing Examiner found that Licensee was so diagnosed. In its Final Adjudication and Order, the Board indicated that Licensee had been diagnosed with a "psychological or physiological dependence upon alcohol." C.R., Item No. 18, at 4. A review of the record, however, contradicts these findings.

Dr. Voskanian initially testified that he believed Licensee suffered from a psychological dependence on alcohol. *Id.* at 110. However, he clarified that opinion two sentences later and stated that, based on a "comparison of what she said and what the records were received [sic]," he could not be certain "about that aspect." *Id.* at 110-11. Dr. Voskanian further admitted his report did not conclude Licensee had a psychological dependence on alcohol, and psychological dependence on alcohol is not a diagnosable disorder under the DSM-V. *Id.* at 111-12.

In the absence of unequivocal testimony that Licensee has a psychological dependence on alcohol, the Board's finding to the contrary is, at best, baffling.  As the Department failed to demonstrate Licensee has a psychological or physiological dependence on alcohol, the Board's determination that she is not safe to practice nursing on that basis simply cannot stand.

## Conclusion

Considering the above, we agree with Licensee that the Department has not shown that Licensee has a psychological dependence on alcohol, and the Board's finding that Licensee suffers from an alcohol use disorder is not based on substantial evidence.  Accordingly, the decision of the Board is reversed.[10]


_____
ELLEN CEISLER, Judge

---

[10] On June 6, 2019, Petitioner filed a supplemental brief setting forth legal authority to support positions made during oral argument held before this Court that same day.  Consideration of this legal authority is unnecessary for disposition of this matter and we therefore decline to address it further.

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jamie Seibert Thim, R.N.,     :
          Petitioner     :
          :
    v.           :    No. 916 C.D. 2018
          :
Bureau of Professional and     :
Occupational Affairs, State     :
Board of Nursing,     :
          Respondent     :

## **O R D E R**

AND NOW, this 24th day of July, 2019, the July 2, 2018 order of the State Board of Nursing is hereby REVERSED.

_____
ELLEN CEISLER, Judge